# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| LESLIE BUTLER for M.D., ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
|     vs. ) | Case No. 4:06CV444MLM |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
|     Defendant. ) | |

## MEMORANDUM OPINION

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of Jo Anne B. Barnhart ("Defendant") denying the application filed by Leslie Butler on behalf of her son, M.D. ("Plaintiff") for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§1381 et seq. Plaintiff's mother filed a brief in support of the Complaint. Doc. 15. Defendant has filed a brief in support of the Answer. Doc. 16. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). Doc. 8.

## I.
## PROCEDURAL HISTORY

Plaintiff's mother, on behalf of Plaintiff, filed an application for SSI on April 7, 2003, alleging disability based on behavioral problems and attention deficit hyperactivity disorder ("ADHD"). (Tr. 63-65). Following an adverse decision Plaintiff's mother requested a hearing before an Administrative Law Judge ("ALJ").[1] (Tr. 36-41, 42-43). The ALJ issued a decision dated September

---

[1] Missouri is one of several test states participating in modifications to the disability determination procedures which apply in this case. See 20 C.F.R. § § 404.906 and 404.966

23, 2005, denying Plaintiff's application. (Tr. 9-18). Plaintiff's mother filed a request for review with the Appeals Council and the Appeals Council denied the request. (Tr. 3-5). As such, the decision of the ALJ stands as the final decision of the Commissioner.

## II.
## TESTIMONY BEFORE THE ALJ

**A.     Plaintiff's Testimony:**

Plaintiff testified that he would be twelve years old in October 2005; that he lives with his father; and that he enjoys singing in the church choir and playing the drums. Plaintiff also stated that he likes math; that he does not like reading; that he was suspended from school five times for fighting and talking back; that he was passing all his classes; that he plays basketball on a school team; that he enjoys playing football with friends; and that he has a girlfriend. (Tr. 141-45).

**B.     Testimony of Plaintiff's Mother:**

Plaintiff's mother testified that Plaintiff's school reported that Plaintiff was "out of control," and that he was "fighting the kids" and scaring teachers. (Tr. 146). She further testified that Plaintiff "kicks walls, breaks stuff, [and] throws stuff"; that he receives "resource" assistance with reading; and that she has seen a "big change" in Plaintiff's behavior since he began taking Concerta. Plaintiff's mother also testified that she has not received any new complaints from Plaintiff's summer school teachers; that one of Plaintiff's teachers called her to advise her "how much better he was doing"; that Plaintiff was sleeping well; that his grades had improved with Concerta; that Plaintiff has no physical problems; and that he is able to look both ways before crossing the street and knows not to get into a car with strangers. (Tr. 147-88).

---

(2002). These modifications include, among other things, the elimination of the reconsideration step and at times, the elimination of the Appeals Council review step in the administrative appeals process. See id. Therefore, Plaintiff's appeal in this case proceeded directly from her initial denial of benefits to the administrative law judge level.

# III.
# MEDICAL EVIDENCE

On April 29, 2003, Plaintiff's mother submitted a "Function Report – Child Age 6 to 12th Birthday" in which she reported that Plaintiff, then nine years of age, had no problems sleeping, hearing, talking, and communicating; that Plaintiff was not limited physically or in his ability to progress in learning; that Plaintiff could read and understand books and magazines, write simple stories, add and subtract numbers, make correct change, and tell time; that Plaintiff did not have friends his own age, get along with adults and his teachers, or play team sports; that Plaintiff kept busy on his own, could eat independently, and get to school on time; that he needed help taking a shower or bath, washing and combing his hair, brushing his teeth, choosing his clothes, and doing chores; and that Plaintiff had trouble completing tasks, including homework and chores (Tr. 74-82).

R. Rocco Cottone, Ph.D., completed a Childhood Disability Evaluation Form for Plaintiff on August 13, 2003. Dr. Cottone reported that Plaintiff's alleged impairment was behavior problems and that there was insufficient evidence to make a finding because Plaintiff had failed to attend a consultive examination. (Tr. 122-23).

Records of the Hopewell Center dated April 25, 2005, reflect that Plaintiff was evaluated on this date. The evaluating therapist reported that Plaintiff was eleven years old and that he was prescribed Risperdal and Concerta. The therapist's notes of this date state that Plaintiff's mother reported that Plaintiff's problems started when he was about four years old; that he had difficulty staying in his seat at school; that he talked back to teachers, refused directions, and had trouble concentrating; that Plaintiff was extremely hyperactive and always on the go; that he forgot directions; and that he was easily distracted and very immature. Notes further state that Plaintiff was receiving counseling; that he had no history of psychiatric care; that he was in the fifth grade; that his grades were poor; that he was suspended five times during the current school year; that he had a good

3

attendance record; and that he had a history of not completing assignments. Notes reflect that Plaintiff said his interests were basketball, football, dancing, singing and playing drums and that he has skills to fix things. Notes state that Plaintiff appeared fairly groomed; that he could not sit still in his chair most of the time; that his attention span and eye contact appeared limited; that his answers were not detailed enough; that his stream of thought appeared normal; that his speech was normal and easy to understand; that Plaintiff's memory appeared to be intact; that the was able to count ten digits front and backwards without missing digits; that he was able to state what he had for breakfast, lunch and dinner the previous day; that he seemed oriented to person, place and thing; that his fund of knowledge appeared adequate for his age; and that his judgment appeared good. The therapist stated that Plaintiff' risk assessment was "between low and moderate," and that Plaintiff would benefit from further psychiatric evaluation and children's programming. The impression and assessments were as follows: at Axis I, ADHD, combined type; at Axis II, deferred diagnosis; at Axis III, none; at Axis IV, education problems - severe; and at Axis V, a GAF of 55. (Tr. 131-37).

Progress notes from the Hopewell Center dated May 17, 2005, state that Plaintiff was on Risperdal and Concerta (Tr. 130).

## IV.
## LEGAL STANDARD FOR CHILD DISABILITY CASES

20 C.F.R. § 416.906 (2000) provides the definition for disability in children. That provision states:

> If you are under age 18, we will consider you disabled if you have a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

In determining disability, the ALJ must utilize a sequential evaluation process set forth in 20 C.F.R. § 416.924 (2000). The ALJ first determines whether plaintiff is doing substantial gainful activity. If so, the plaintiff is not disabled. 20 C.F.R. § 416.924(b). If not, the ALJ considers plaintiff's physical or mental impairment to determine whether plaintiff has a medically determinable impairment(s) that is severe. 20 C.F.R. § 416.924(c). If the impairment(s) is not medically determinable or is a slight abnormality that causes minimal limitations, the ALJ will find that plaintiff does not have a severe impairment and is not disabled. 20 C.F.R. § 416.924(c). If the impairment(s) is severe, it must meet, meet, or medically or functionally equal the listings. 20 C.F.R. § 416.924(d).

Further, when determining functional limitations, 20 C.F.R. § 416.926a(a) (2002) provides that where a severe impairment or combination of impairments does not meet or medically equal any listing, the limitations will "functionally equal the listings" when the impairment(s) "result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." The ALJ considers how a plaintiff functions in activities in the following six domains: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating to others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and (vi) Health and physical well-being." 20 C.F.R. § 416.926a(b)(1). A limitation is "marked" when it "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. §416.926a(e)(2). A limitation is "extreme" when it "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. §416.926a(e)(3).

Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, that decision must be affirmed if it is supported by substantial evidence. Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v.

Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). In Bland v. Bowen, 861 F.2d 533 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> [t]he concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

Id. at 535. See also Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994); Turley v. Sullivan, 939 F.2d 524, 528 (8th Cir. 1991).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1994); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. Krogmeier, 294 F.3d at 1022 (internal citations omitted). See also Eichelberger, 390 F.3d at 589; Nevland v. Apfel, 204 F.3d 853, 857 (8th Cir. 2000) (quoting Terrell v. Apfel, 147 F.3d 659, 661 (8th Cir. 1998)); Hutsell v. Massanari, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical impairment which can be expected to result

in death or has lasted or can be expected to last for a continuous period of not less than 12 months …." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

"While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. Masterson v. Barnhart, 363 F.3d 731, 738 (8th Cir. 2004); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995); Robinson v. Sullivan, 956 F.2d 836, 841(8th Cir. 1992); Ricketts v. Sec'y of Health and Human Servs., 902 F.2d 661, 664 (8th Cir. 1990); Jeffery v. Sec'y of Health and Human Servs., 849 F.2d 1129, 1132 (8th Cir. 1988). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson, 956 F.2d at 841; Butler v. Sec'y of Health and Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

# V.
# DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. Krogmeier, 294 F.3d at 1022.

Plaintiff contends that the ALJ failed to properly consider Plaintiff's residual functional capacity ("RFC") and the listing of impairments.

The ALJ found that Plaintiff had medically determinable impairments of ADHD and a behavior problem but concluded that Plaintiff's impairments do not meet the listing of impairments. 20 C.F.R. Ch. III, Pt.404, Subpt. P, App. 1, § 112.11, the Listing for ADHD, states that:

> The required level of severity for [ADHD] is met when the requirements in both A and B are satisfied.
>
> A.    Medically documented findings of all three of the following:
>
>     1. Marked inattention; and
>     2. Marked impulsiveness; and
>     3. Marked hyperactivity;
>
> AND
>
> B.    ... [F]or children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

Paragraph B of 112.02 states that for children age three to eighteen, the impairment must result in at least two of the following:

> (a) Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings ... and including, if necessary, the results of appropriate standardized psychological tests of language and communication; or
> (b) Marked impairment in age-appropriate social functioning, documented by history and medical findings ... and including, if necessary, the results of appropriate standardized tests; or
> (c) Marked impairment in age-appropriate personal functioning, documented by history and medical findings ... and including, if necessary, appropriate standardized tests; or
> (d) Marked difficulties in maintaining concentration, persistence, or pace.

First, the ALJ in the matter under consideration considered that Plaintiff, who was eleven years old at the time of the hearing, has ADHD and behavioral problems which are severe within the meaning of 20 C.F.R. § 416.924(c). Next, the ALJ proceeded to determine whether Plaintiff meets, or medically equals or is functionally equivalent to a Listing. Pursuant to § 426.924(a), the ALJ

8

considered how Plaintiff's functioning compares to that of unimpaired children of his same age; the combined effects of his impairments; how well he can initiate, sustain, and complete activities; how he functions in unfamiliar or one-on-one settings compared to usual settings at home, school, or in the community; accommodations provided to Plaintiff and his attendance and participation in an education program; the impact of his illness and limitations which interfere with his activities; and the effects of treatment, including medications, on his functioning.

In particular, the ALJ considered Plaintiff's mother's testimony regarding the reports of his teachers that he is out of control; that he fights in school; and that teachers are afraid of Plaintiff. The ALJ further considered that Plaintiff's mother testified that he was suspended from school; that Plaintiff is in a resource class for reading and has been there for two to three years; that Plaintiff's summer school teacher reported that his grades were better; and that Plaintiff has no physical complaints.

The ALJ further considered, in detail, the assessment completed at the Hopewell Center on April 25, 2005, which assessment is described above. The ALJ then noted that in determining whether Plaintiff meets a Listing the ALJ must consider how Plaintiff performs in the six domains of functioning as specified by § 416.926a(b) and that to be found disabled he must have extreme limitations in one domain or marked limitations in at least two domains. Consistent with §416.926a(e)(2), the ALJ noted that marked limitations seriously interfere with the ability to independently initiate, sustain, or complete activities. Consistent with §416.926a(e)(3), the ALJ noted that extreme limitations interfere "very seriously with [a] child's ability to independently initiate, sustain, or complete activities."

**A.  Domain of Acquiring and Using Information:**

9

Consistent with § 416.92a(b)(1)(I), the ALJ considered that the domain of acquiring and using information considers "how well the child acquires or learns information, and how well the child uses information learned." (Tr. 15). The ALJ considered that Plaintiff was currently receiving resource services in reading and that he had a history of not completing assignments. The ALJ found that Plaintiff has some limitations in acquiring and using information and concluded that Plaintiff has less than marked limitations in the domain of acquiring and using information. The court further notes that Plaintiff's mother reported that Plaintiff was not limited in his ability to progress in learning; that Plaintiff can read and understand books and magazines; and that he can write simple stories, add, and subtract, make correct change, and tell time. Additionally, a therapist reported in April 2005 that Plaintiff's fund of knowledge appeared adequate for his age; that he argued very well; and that Plaintiff said that he had skills to fix things. Also, Plaintiff testified that he was passing all of his classes and his mother reported that Plaintiff's grades had improved in summer school and he was doing much better since taking Concerta. Indeed, conditions which can be controlled by treatment are not disabling. See Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); Murphy, 953 F.2d 383, 384 (8th Cir. 1992); Warford v. Bowen, 875 F.2d 671, 673 (8th Cir. 1989) (holding that a medical condition that can be controlled by treatment is not disabling); James, 870 F.2d at 450. The court finds that the ALJ's conclusion that Plaintiff has less than marked limitations in the domain of acquiring and using information is supported by substantial evidence and that his decision in this regard is consistent with the Regulations.

**B.    The Domain of Attending and Completing Tasks:**

Consistent with § 416.926a(b)(1)(ii), the ALJ stated that "[t]his domain considers how well the child focuses and maintains attention; begins, carries through, and finishes activities ... ; and the ease with which the child changes activities." (Tr. 16). The ALJ concluded that in this domain

Plaintiff has less than marked limitations although he has problems with focusing, paying and maintaining attention as well as attending and completing tasks. The court finds that the ALJ's findings in regard to the domain of attending and completing tasks is based on substantial evidence and is consistent with the Regulations.

**C.     The Domain of Interacting and Relating with Others:**

Consistent with § 416.926a(b)(1)(iii), the ALJ stated that this domain considers "how well the child initiates and sustains emotional connections with others, develops and uses the community's language, cooperates with others, complies with rules, responds to criticism, and respects and takes care of the possessions of others." (Tr. 16). The ALJ concluded that Plaintiff does have marked limitations in this area as he has a history of aggressive behavior. The court notes that the April 2005 evaluation stated that Plaintiff's social judgment appeared good. Also, Plaintiff testified at the hearing that he plays basketball on a school team, that he enjoys playing football with friends, and that he has a girlfriend. The court finds that the ALJ's finding in regard to the domain of interacting and relating with others is based on substantial evidence and that it is consistent with the Regulations.

**D.     The Domain of Moving and Manipulating Objects:**

Consistent with § 416.926a(b)(1)(iv), the ALJ stated that this domain considers "how well the child's gross motor skills (bodily movement) and fine motor skills (hand and finger movements) have developed." (Tr. 16). The ALJ found that Plaintiff has no limitations in this domain. Significantly, Plaintiff's mother testified that Plaintiff has no physical problems and, as stated above, Plaintiff testified that he plays basketball and football. The court finds that the ALJ's findings in regard to the domain of moving and manipulating objects is based on substantial evidence and is consistent with the Regulations.

**E.     The Domain of Caring for Yourself (Self-Care):**

Consistent with § 416.926a(b)(1)(v), the ALJ stated that this domain considers "how well the child maintains a healthy emotional and physical state including appropriately seeking and maintaining physical and emotional wants and needs; coping with stress and environmental changes; and caring for his or her own health, possessions, and living area." (Tr. 16-17). The ALJ noted that §416.926a(k) describes limitations in this domain; that the examples do not necessarily describe a marked or extreme limitation; and that, "in any case," limitations must result from medically determinable impairments. The court notes that the Regulations state that children ages six to twelve should be independent in most day-to-day activities such as dressing and bathing " although [they] may still need to be reminded sometimes to do these routinely." Additionally, such children should "be able to avoid behaviors that are unsafe or otherwise not good." § 416.926a(k)(2)(iv). The ALJ concluded that Plaintiff has no limitations in this domain. The court notes that the record reflects that Plaintiff's mother did report in April 2003 that at the time he was nine years old, Plaintiff needed help bathing, brushing his teeth, and choosing clothes. The record, however, does not reflect that Plaintiff needed such assistance at the time of the hearing when he was eleven years old. The April 2005 evaluation, moreover, reflects that Plaintiff was appropriately dressed and fairly groomed and that his personal hygiene was good. The therapist also noted, pursuant to this evaluation, that Plaintiff's "social judgment appeared good." (Tr. 136). The court finds, therefore, that the ALJ's decision in regard to the domain of caring for yourself is based on substantial evidence and that it is consistent with the Regulations.

**F.      The Domain of Health and Physical Well Being:**

Consistent with § 416.926a(b)(1)(vi), the ALJ stated that this domain considers "cumulative physical restrictions upon functioning of physical and mental impairments and their associated

12

treatments or therapies on the child's functioning not considered in the 'Moving About and Manipulating Objects' domain." (Tr. 17). The ALJ found that Plaintiff has no limitations in this domain. As stated above, Plaintiff's mother testified at the hearing that he had no physical limitations. The court finds that the ALJ's decision in regard to the domain of health and physical well being is based on substantial evidence and that it is consistent with the Regulations.

Consistent with the Regulations, because he found that Plaintiff does not have an extreme limitation in one domain or a marked limitation in two or more domains, the ALJ found that Plaintiff does not have impairments which functionally equal, singularly or in combination, any listed impairment. As such, consistent with the Regulations as discussed above, the ALJ found that Plaintiff is not disabled for purposes of SSI.

To the extent that the ALJ did not specifically articulate the criteria for Listing 112.11, ADHD, the Eighth Circuit holds that such a failure is not reversible error where the record supports the ALJ's "overall conclusion." Pepper ex rel. Gardner v. Barnhart, 342 F.3d 853, 855 (8th Cir. 2003). See also Karlix v. Barnhart, 457 F3d 742, 746 (8th Cir. 2006) ( "The fact that the ALJ did not elaborate on this conclusion does not require reversal, because the record supports her overall conclusion.") (citing Pepper, 342 F.3d at 855).

Listing 112.11 requires "medically documented findings" in regard to inattention, marked impulsiveness, and marked hyperactivity. Listing 112.11 also requires a marked impairment, documented by medical findings and/or history, in two of the following areas: cognitive/communicative function, social functioning, personal functioning, and maintaining concentration, persistence, and pace. As stated above, Plaintiff's mother testified that he was doing much better in school; that he was sleeping well; and that his grades improved with medication. Plaintiff testified he plays team sports and has a girlfriend and his mother reported in 2003 that

Plaintiff could read, write simple stories, add and subtract, make correct change, and tell time. Plaintiff's mother also reported that he could eat independently and get to school on time. Additionally, as stated above, a therapist reported in April 2005 that Plaintiff's social judgment appeared good; that he argued very well; that his fund of knowledge appeared adequate for his age; and that he had a Global Assessment of Functioning ("GAF") of 55. A GAF is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See Diagnostic and Statistical Manual of Mental Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 51 to 60 represent "moderate symptoms." As such, the court finds that the ALJ's finding that Plaintiff does not have an impairment which meets a Listing is supported by substantial evidence even though the ALJ did not specifically address Listing 112.11. Karlix, 457 F.3d at 746; Pepper ex rel. Gardner, 342 F.3d at 855.

## VI.
## CONCLUSION

For the reasons more fully set forth above, the court finds that the ALJ's decision is supported by substantial evidence contained in the record as a whole, and that, therefore, the Commissioner's decision should be affirmed.

**ACCORDINGLY,**

**IT IS HEREBY ORDERED** that the relief sought in the Brief in Support of Complaint is **DENIED;** [15]

**IT IS FINALLY ORDERED** that a separate judgement be entered in the instant cause of action.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

14

Dated this 28th day of December, 2006.